UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Christopher C. Seifert,　　　:
　　　　Plaintiff,　　　　　:
　　　　　　　　　　　　　:
　　　　v.　　　　　　　　:　　File No. 2:08-CV-215
　　　　　　　　　　　　　:
Robert Hofmann, Delores　　:
Burroughs-Biron,　　　　　:
　　　　Defendant.　　　　 :

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 14 and 16)

　　　　Plaintiff Christopher Seifert, a Vermont inmate
proceeding *pro se*, alleges that the defendants have failed
to provide him with adequate medical care and sanitary
living conditions.  His claims center on a series of skin
infections he contracted while housed first at an out-of-
state prison facility in Tennessee, and then at a facility
in Newport, Vermont.

　　　　Pending before the Court are the defendants' motions to
dismiss, in which they argue (1) that the claims against
them in their official capacities are barred by the Eleventh
Amendment immunity, and (2) that the complaint does not set
forth sufficient personal involvement for them to be held
liable in their individual capacities.  For the reasons set
forth below, I recommend that the motions to dismiss be
GRANTED, but that Seifert be allowed 30 days in which to

amend his individual capacity claims.

Factual Background

For the limited purpose of ruling upon the pending motions to dismiss, the Court will accept the facts alleged in the complaint as true. Siefert claims that between September 6, 2007 and June 10, 2008, while in the custody of the Vermont Department of Corrections ("DOC"), he contracted severe skin infections on eight separate occasions. The infections, reportedly known as Methicillin Resistant Staphylococcus Aureus ("MRSA"), caused pain and scarring and were resistant to several forms of antibiotics. Seifert claims that he did not receive prompt and appropriate medical attention, and that the infections were the result of unsanitary housing conditions.

Seifert suffered the first series of infections while housed out-of-state at the West Tennessee Detention Facility. He alleges that this facility "is contracted by the Vermont DOC." (Paper 5 at 4).

> Each time I would complain to medical staff about these infections I was made to wait approx. 7-10 days before seeing a Licensed Doctor! This caused the infections to become severe and <u>extremely</u> painful. During the course of the infections I was unable to sleep at night because the pain was so great and the facility would not provide medication for it . . . . After seeing a doctor I

> was put on the wrong antibiotics . . . again
> causing the infection to become worse!  (This only
> happened 3 out of the 4 times).  By the time I was
> put on the proper medication the infection had
> eaten extremely deep holes into my right arm and
> left leg which were draining and spreading to
> other parts of my body!

Id. (emphasis and parenthetical in original).

Seifert contracted the next group of infections while incarcerated at the Northern State Correctional Facility in Newport, Vermont.  As in Tennessee, he was required to wait several days before he could see a doctor, and medical staff again put him on medications that were ineffective against MRSA.

In May 2008, one of the infections became so severe that Seifert had to be hospitalized.  When he arrived at North Country Medical Center, intravenous medication was administered immediately.  "By this time I had an absess under my left arm about the size of an orange and my entire left arm was infected."  Id. at 5.  Emergency room doctors lanced the absess and "ordered me to be admitted for at least 1-2 weeks to monitor my infection through the I-V." Id.  However, Prison Health Services and the DOC allegedly determined that 24-hour supervision was too expensive, and decided to instead transport Seifert to the hospital every

12 hours for medication.  "Upon returning to the correctional facility I was immediately cut off my pain medication that that [sic] the hospital agreed to give me and was then put on Vicodin 5/500 twice a day!  Thus causing the pain to return once again!"  Id. at 5-6.

Seifert alleges that MRSA is life-threatening if not treated properly.  He claims that he is covered with scars as a result of the disease, and that proper treatment would have significantly reduced the severity of his pain and infection.

He also alleges that he would not have contracted MRSA if his prison conditions had been sanitary.  Specifically, he claims that the prisons, in both Tennessee and Vermont, are "covered with biohazards including but not limited to buggers [sic], urine, blood and mucus . . . urine and like bodily fluids are all around toilets!"  Id. at 6.  Part of the problem, he adds, is that prisoners are not allowed to use cleaning fluids such as Lysol or bleach, and that the cleaning agents provided to prisoners are diluted.  He further claims that infected prisoners are allowed into the general prison population.

For damages, Seifert seeks $750,000 from the DOC for

pain, fear of loss of life, and unsanitary living conditions. He also seeks $750,000 from Prison Health Services for poor medical treatment and the resulting physical and emotional harm. Prison Health Services is not currently a defendant in the case. <u>Id.</u> at 3.

The named defendants are then-DOC Commissioner Robert Hofmann, and DOC Health Services Director Delores Burroughs-Biron. The only specific claim against Hofmann is that Seifert contracted his infections while "under the supervision of the Commissioner of Corrections!" <u>Id.</u> Similarly, the sole claim against Burroughs-Biron is that she was "the person in charge of all medical treatment within the Vermont Department of Corrections." <u>Id.</u> These defendants now move to dismiss, arguing Eleventh Amendment immunity and lack of personal involvement. The motions are unopposed.

<u>Discussion</u>

I. <u>Motion To Dismiss Standard</u>

On a motion to dismiss, the Court must accept as true all of the factual allegations in the complaint, and it draw all reasonable inferences in Seifert's favor. <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir

5

2007).  The complaint's allegations, however, "must be enough to raise a right of relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).  Thus, Seifert must allege "enough facts to state a claim to relief that is plausible on its face."  Id. at 1974.  This "flexible 'plausibility standard,' . . . obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."  Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original) (quoting Twombly, 127 S. Ct. at 1968).  If Seifert "[has] not nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  Twombly, 127 S. Ct. at 1974.  Because Seifert is proceeding *pro se,* the Court must construe his pleadings liberally, and read them "to raise the strongest arguments they suggest."  Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001).

II.  Eleventh Amendment Immunity

The defendants first argue that any claims against them in their official capacities are barred by the State of Vermont's sovereign immunity under the Eleventh Amendment. The Eleventh Amendment prohibits suits in federal court by

citizens against a state and its agencies, absent a waiver of immunity and consent to suit by the state or a valid abrogation of constitutional immunity by Congress. <u>See</u>, <u>e.g.</u>, <u>Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 142-47 (1993); <u>Pennhurst State Sch. and Hosp. v. Halderman</u>, 465 U.S. 89, 97-100 (1984). The Eleventh Amendment also bars claims for damages brought against state employees sued in their official capacities. <u>See</u> <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991); <u>Pennhurst</u>, 465 U.S. at 102.

Relevant to this case, there has been no waiver of Vermont's sovereign immunity and no abrogation of that immunity by Congress. In fact, the Vermont legislature has specifically preserved the State's immunity under the Eleventh Amendment. <u>See</u> 12 V.S.A. § 5601(g). Accordingly, and because Seifert is solely seeking damages, the official capacity claims against Hofmann and Burroughs-Biron should be DISMISSED.

## III. <u>Personal Involvement</u>

The defendants next contend that they are entitled to dismissal in their individual capacities because the complaint does not allege their personal involvement in

either Seifert's medical care or the maintenance of his living units.  It is plain from the complaint that both defendants are being sued in their roles as supervisors in the DOC.

The Second Circuit has made clear that, for a supervisory defendant to be held liable under § 1983, the claim cannot rest on *respondeat superior*.

> '[S]upervisor liability in a § 1983 action depends
> on a showing of some personal responsibility, and
> cannot rest on *respondeat superior*.'  <u>Hernandez v.
> Keane</u>, 341 F.3d 137, 144 (2d Cir. 2003) (citing
> <u>Al-Jundi v. Estate of Rockefeller</u>, 885 F.2d 1060,
> 1065 (2d Cir. 1989)).  To establish the liability
> of a supervisory official under § 1983, a
> plaintiff must show the defendant's personal
> involvement in the alleged constitutional
> violations.  <u>See</u> <u>Green v. Bauvi</u>, 46 F.3d 189, 194
> (2d Cir. 1995).  By the same token, however, mere
> 'linkage in the prison chain of command' is
> insufficient to implicate a state commissioner of
> corrections or a prison superintendent in a § 1983
> claim.  <u>Ayers v. Coughlin</u>, 780 F.2d 205, 210 (2d
> Cir. 1985); <u>see</u> <u>also</u> <u>Wright v. Smith</u>, 21 F.3d 496,
> 501 (2d Cir. 1994) (noting that a defendant in a §
> 1983 action may not be held liable for
> constitutional violations merely because he held a
> high position of authority).

> Supervisor liability under § 1983 "can be shown in
> one or more of the following ways: (1) actual
> direct participation in the constitutional
> violation, (2) failure to remedy a wrong after
> being informed through a report or appeal, (3)
> creation of a policy or custom that sanctioned
> conduct amounting to a constitutional violation,
> or allowing such a policy or custom to continue,
> (4) grossly negligent supervision of subordinates

who committed a violation, or (5) failure to act
on information indicating that unconstitutional
acts were occurring." <u>Hernandez</u>, 341 F.3d at 145;
<u>see</u> <u>also</u> <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d
Cir. 1995).

<u>Richardson v. Goord</u>, 347 F.3d 431, 435 (2d Cir. 2003).

Here, Seifert does not allege that either defendant had

any direct involvement in his care.  Instead, he alleges

that "medical staff" required him to wait several days

before he could see a doctor.  (Paper 5 at 4).  He also

claims that "nureses [sic]" ignored his complaints, and that

unnamed doctors placed him on the wrong medications.  <u>Id.</u>

None of his health care providers are identified by name,

and it does not appear from his allegations that either the

DOC Commissioner or the Director of Health Services played

any direct role in his treatment.

Nor does Seifert claim that the defendants were on

notice of his medical issues.  Consequently, he cannot claim

that the defendants failed to remedy the alleged wrong, or

that they were deliberately indifferent to his situation.

Furthermore, Seifert does not set forth any policy or custom

that led to his allegedly inadequate care, and makes no

claim of grossly negligent supervision.

The Court should make similar findings with respect to

Seifert's claims of unsanitary conditions and unnecessary exposure to infected inmates. The defendants in this case obviously played no direct role in the daily maintenance of Seifert's prison units, either in Tennessee or Vermont. Nor does the complaint allege that they were on notice of such conditions, created a policy or custom that allowed for poor conditions, or that they were grossly negligent in their supervision with respect to maintenance issues.

As to exposure to other inmates, there again is no direct link to the named defendants. Seifert alleges vaguely that "several inmates with [MRSA] are allowed to remain in general population causing the infection to spread throughout the inmate population." Id. at 6. He does not claim that the defendants were aware of this issue, that they created a policy or custom allowing it, or that there was a problem with employee supervision. Accordingly, the defendants are entitled to dismissal of all claims brought against them in their individual capacities.

IV. Leave to Amend

The Second Circuit has urged that "when addressing a *pro se* complaint, a district 'court should not dismiss without granting leave to amend at least once when a liberal

reading of the complaint gives any indication that a valid claim might be stated.'" Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (quoting Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)); Davidson v. Flynn, 32 F.3d 27, 31 (2d Cir. 1994) ("sparse pleadings by a *pro se* litigant unfamiliar with the requirements of the legal system may be sufficient at least to permit the plaintiff to amend his complaint to state a cause of action"); Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"). In this case, Seifert has failed to allege sufficient personal involvement on behalf of the named defendants. His complaint suggests, however, that with additional facts he may be able to state a valid claim. I therefore recommend that, while granting the defendants' motions to dismiss, the Court allow Seifert 30 days in which to amend his individual capacity claims. Failure to file a properly amended complaint within that time period should result in the dismissal of all claims with prejudice.

## Conclusion

For the reasons set forth above, I recommend that the defendants' motions to dismiss (Paper 14 and 16) be GRANTED. I further recommend that Seifert be allowed 30 days in which

amend his claims brought against the defendants in their
individual capacities.  Failure to file a properly amended
complaint within that time period should result in the
dismissal of all claims with prejudice.

Dated at Burlington, in the District of Vermont, this
8ᵗʰ day of May, 2009.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation
within 10 days after service by filing with the clerk of the
court and serving on the magistrate judge and all parties,
written objections which shall specifically identify the
portions of the proposed findings, recommendations or report
to which objection is made and the basis for such
objections.  Failure to file objections within the specified
time waives the right to appeal the District Court's order.
See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1);
Fed. R. Civ. P. 72(b), 6(a) and 6(e).