UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Christopher C. Seifert,
    Plaintiff,

    v.                              Civil Action No. 2:08-CV-215

Robert Hofmann, Delores
Burroughs-Biron,
    Defendants.

## **REPORT AND RECOMMENDATION**
(Docs. 23 and 26)

        Plaintiff Christopher Seifert, a Vermont inmate proceeding *pro se*, alleges that the defendants have failed to provide him with adequate medical care and sanitary living conditions. His claims center on a series of skin infections he contracted while housed first at an out-of-state prison facility in Tennessee, and then at a facility in Newport, Vermont.

        The defendants filed motions to dismiss earlier in the case. The motions were granted, but Seifert was allowed to amend his complaint. The primary flaw in the initial complaint was that he had failed to demonstrate personal involvement by either defendant. In his amended complaint, Seifert alleges that the defendants were aware of his condition by virtue of grievances he filed during his illness, and through communications from the Vermont Department of Health. Seifert also claims that the defendants failed to implement federal guidelines for managing infectious diseases.

        Pending before the Court are the defendants' second set of motions to dismiss, in which they argue that Seifert has still failed to allege their personal involvement in any

allegedly unconstitutional conduct. For the reasons set forth below, I recommend that the motions to dismiss be GRANTED and this case be DISMISSED.

## Factual Background

For the limited purpose of ruling upon the pending motions to dismiss, the Court will accept the facts alleged in the amended complaint as true.[1]

Seifert claims that between September 6, 2007 and June 10, 2008, while in the custody of the Vermont Department of Corrections ("DOC"), he contracted severe skin infections on eight separate occasions. The infections, reportedly known as Methicillin Resistant Staphylococcus Aureus ("MRSA"), caused pain and scarring and were resistant to several forms of antibiotics. Seifert alleges that he did not receive prompt and appropriate medical attention, and that the infections were the result of unsanitary housing conditions.

Seifert suffered the first series of infections while housed out-of-state at the West Tennessee Detention Facility. He alleges that this facility "is contracted by the Vermont DOC." (Doc. 5 at 4.)

> Each time I would complain to medical staff about these infections I was made to wait approx. 7-10 days before seeing a Licensed Doctor! This caused the infections to become severe and extremely painful. During the course of the infections I was unable to sleep at night because the pain was so great and the facility would not provide medication for it . . . . After seeing a doctor I was put on the wrong antibiotics . . . again causing the

---

[1] Because the amended complaint relies significantly upon the allegations in the initial complaint, the facts summarized herein are in large part a repeat of those set forth in the my previous Report and Recommendation.

2

>    infection to become worse! (This only happened 3 out of the 4 times). By
>    the time I was put on the proper medication the infection had eaten
>    extremely deep holes into my right arm and left leg which were draining
>    and spreading to other parts of my body!

*Id.* (emphasis and parenthetical in original.)

Seifert contracted the next group of infections while incarcerated at the Northern State Correctional Facility ("NSCF") in Newport, Vermont. As in Tennessee, he was required to wait several days before he could see a doctor, and medical staff again put him on medications that were ineffective against MRSA.

In May 2008, one of the infections became so severe that Seifert had to be hospitalized. When he arrived at North Country Medical Center, intravenous medication was administered immediately. "By this time I had an absess [sic] under my left arm about the size of an orange and my entire left arm was infected." *Id.* at 5. Emergency room doctors lanced the absess and "ordered me to be admitted for at least 1-2 weeks to monitor my infection through the I-V." *Id.* However, Prison Health Services and the DOC allegedly determined that 24-hour supervision was too expensive, and decided to instead transport Seifert to the hospital every 12 hours for medication. "Upon returning to the correctional facility I was immediately cut off my pain medication that that [sic] the hospital agreed to give me and was then put on Vicodin 5/500 twice a day! Thus causing the pain to return once again!" *Id.* at 5-6.

Seifert alleges that MRSA is life-threatening if not treated properly. He claims that he is covered with scars as a result of the disease, and that proper treatment would

3

have significantly reduced the severity of his pain and infection.

He also alleges that he would not have contracted MRSA if his prison conditions had been sanitary. Specifically, he claims that the prisons, both in Tennessee and in Vermont, are "covered with biohazards including but not limited to buggers [sic], urine, blood and mucus . . . urine and like bodily fluids are all around toilets!" *Id.* at 6. Part of the problem, he adds, is that prisoners are not allowed to use cleaning fluids such as Lysol or bleach, and that the cleaning agents provided to prisoners are diluted. He further claims that infected prisoners are allowed into the general prison population.

For damages, Seifert seeks $750,000 from the DOC for pain, fear of loss of life, and unsanitary living conditions. He also seeks $750,000 from Prison Health Services for poor medical treatment and the resulting physical and emotional harm. Prison Health Services is not a defendant in the case. *Id.* at 3.

The named defendants are then-DOC Commissioner Robert Hofmann and DOC Health Services Director Delores Burroughs-Biron. In the initial complaint, the only specific claim against Hofmann was that Seifert contracted his infections while "under the supervision of the Commissioner of Corrections!" *Id.* Similarly, the sole claim against Burroughs-Biron was that she was "the person in charge of all medical treatment within the Vermont Department of Corrections." *Id.* The defendants moved to dismiss all official capacity claims under the Eleventh Amendment, and all individual capacity claims for lack of personal involvement. The motions were granted, but Seifert was granted leave to amend his complaint.

4

In his amended complaint, Seifert first clarifies that his claims are brought against the defendants solely in their individual capacities. He then informs the Court that he put the defendants on notice of his medical issues through grievances filed between September 6, 2007 and June 10, 2008. A nurse at NSCF was subsequently assigned to investigate his claims. After completing her investigation, the nurse allegedly informed Seifert that his grievances would be "forwarded to the facilities Medical doctor (name unknown)." (Doc. 19 at 2 (parenthetical in original).) The nurse also stated that Dr. Burroughs-Biron would meet with him "due to multiple MRSA infections over the past several months." *Id.* This meeting with Dr. Burroughs-Biron never took place.

Seifert also complained to the Vermont Department of Health. As a result, the Department of Health contacted both defendants in August 2008, and reported back to Seifert by letter later that month: "'We spoke with Dr. Delores Burroughs-Biron, the Department of Corrections Medical Director, who has instituted new Infection Control practices aimed at limiting the spread of MRSA and other infectious diseases within the correctional facilities." The letter further explained that Commissioner Hofmann had been asked "to look into the issues you have raised and to take whatever additional action is warranted." (Doc. 20-4.)

Seifert's final claim is that the facilities in Tennessee and Vermont were required to adhere to policies established by the Federal Bureau of Prisons with regard to management of MRSA infections, and failed to do so.

The defendants have moved to dismiss the amended complaint, arguing that Seifert

5

has still not alleged sufficient personal involvement for individual capacity liability under 42 U.S.C. § 1983.

## Discussion

### I. Motion To Dismiss Standard

On a motion to dismiss, the Court must accept as true all of the factual allegations in the complaint, and draw all reasonable inferences in Seifert's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir 2007). The complaint's allegations, however, "must be enough to raise a right of relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, Seifert must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). If Seifert "[has] not nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570. Because Seifert is proceeding *pro se,* the Court must construe his pleadings liberally, and read them "to raise the strongest arguments they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001).

### II. Personal Involvement

As in his initial complaint, Seifert does not allege that the defendants were directly involved in his care. Instead, he seeks to hold the defendants liable for their respective roles as supervisors. As I explained in my previous Report and Recommendation, a claim

against a supervisory defendant under § 1983 cannot rest on *respondeat superior*. The Second Circuit has established the standard for supervisor liability in a § 1983 action as follows:

> '[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*.' *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citing *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)). To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violations. *See Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). By the same token, however, mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority).
>
> Supervisor liability under § 1983 "can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Hernandez*, 341 F.3d at 145; *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

*Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

Seifert's initial complaint alleged that "medical staff" required him to wait several days before he could see a doctor. (Doc. 5 at 4.) He also claimed that "nureses [sic]" ignored his complaints, and that unnamed doctors placed him on the wrong medications. *Id.* None of his health care providers were identified by name, and it did not appear from his allegations that either the DOC Commissioner or the Director of Health Services

7

played any direct role in his treatment. Consequently, the Court found that his allegations were insufficient, and required him to amend his complaint.

Seifert now alleges that the defendants were on notice of his medical issues, both through prison grievances and through correspondence from the Department of Health. With respect to the grievances, it is well established that "the mere receipt of a grievance appeal does not suffice to place a supervisor on notice that a constitutional violation has occurred." *Mandell v. Goord*, 2009 WL 3123029, at *13 (N.D.N.Y. Sept. 29, 2009) (citing *Burns v. Trombly*, 2008 WL 2003804, at *15 (N.D.N.Y. May 7, 2008)); *see Ashcroft*, 129 S. Ct. at 1949 (rejecting argument that supervisor's "mere knowledge" of subordinate's misconduct "amount[s] to the supervisor's violating the Constitution."); *Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009) (holding that claim was properly dismissed where only allegation pertaining to supervisory defendants was that plaintiff had filed complaints); *Walker v. Pataro*, 2002 WL 664040, at *12 (S.D.N.Y. April 23, 2002) ("if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability.").

Seifert also alleges that in response to the grievances, a facility nurse was assigned to investigate. Even if the Court assumes that it was one of the defendants who delegated the investigation, it is again well settled that such action is insufficient to establish personal involvement. *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *Vega v.*

*Artus*, 610 F. Supp. 2d 185, 199 (N.D.N.Y. 2009) (stating that facility superintendent's act of "referring [plaintiff's] letters to staff for investigation is not sufficient to establish [his] personal involvement," and dismissing plaintiff's claims against superintendent "due to Plaintiff's failure to allege facts plausibly suggesting" superintendent's personal involvement in the alleged constitutional violations); *Farid v. Goord*, 200 F. Supp.2d 220, 235 (W.D.N.Y. 2002) (dismissing claims of personal involvement against supervisory official who merely sent grievances "down the chain of command for investigation").

As to Seifert's claim that the defendants were placed on notice by the Department of Health, it is plain from his allegations that this notice was provided *after* he was ill. The complaint alleges that Seifert suffered from MRSA between September 2007 and June 2008. (Doc.5 at 3.) His amended complaint states that "the Vermont Department of Health contacted both defendants" on August 17, 2008. (Doc. 19 at 1.) The Court notes that the letter, submitted by Seifert as an exhibit (Doc. 20-4), states that the Department of Health received a letter from Seifert on August 17, 2008, and contacted the defendants thereafter. In any event, notice from the Department of Health did not occur until after Seifert's period of illness.

The Department of Health also informed Seifert that Dr. Burroughs-Biron would be instituting "new Infection Control practices aimed at limiting the spread of MRSA and other infectious diseases within the correctional facilities," and that Commissioner Hofmann had also been asked to "take whatever additional action is warranted." (Doc. 20-4.) Consequently, rather than ignoring the situation, it appears from Seifert's

9

allegations that Dr. Burroughs-Biron, and perhaps Commissioner Hofmann, took action to remedy any shortcomings in the DOC's disease-prevention efforts.

Seifert's final claim is that the DOC should have followed guidelines set forth by the Federal Bureau of Prisons for managing infectious diseases. Specifically, he claims that the defendants "are responcible [sic] for violating" two federal guidelines, one with regard to reporting MRSA cases to central authorities, and the other to the treatment of correctional workers who have skin infections. (Doc. 19 at 2.) It is not clear how either guideline would have impacted Seifert's medical care. Furthermore, Seifert does not allege that the defendants' failure to adhere to a federal guideline rose to the level of a constitutional violation.

In short, Seifert's allegations do not indicate personal involvement in unconstitutional conduct by either defendant. He alleges no direct participation in his treatment, and the fact that he filed grievances is insufficient for liability under § 1983. Rather than alleging the failure to remedy a wrong after being informed, Seifert's filings suggest that the defendants took action to improve the DOC's response to infectious diseases. Furthermore, Seifert does not set forth any policy or custom that led to his allegedly inadequate care, and makes no claim of grossly negligent supervision. *See Curley v. AMR Corp*, 153 F.3d 5, 13 (2d Cir. 1998) (quoting *AT&T Co. v. City of New York*, 83 F.3d 549, 556 (2d Cir. 1996) (stating that gross negligence is conduct that "evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing").

And as was the case in the Court's prior ruling, the same conclusion can be reached with respect to Seifert's claims of unsanitary conditions and unnecessary exposure to infected inmates. "The defendants in this case obviously played no direct role in the daily maintenance of Seifert's prison units, either in Tennessee or Vermont. Nor does the complaint allege that they were on notice of such conditions, created a policy or custom that allowed for poor conditions, or that they were grossly negligent in their supervision with respect to maintenance issues." (Doc. 18 at 10.)

Accordingly, the defendants are entitled to dismissal of all claims brought against them in their individual capacities. Given that those are the only remaining claims, and that Seifert was previously allowed to amend his complaint, the motions to dismiss should be GRANTED and this case should be DISMISSED.

## **Conclusion**

For the reasons set forth above, I recommend that the defendants' motions to dismiss (Docs. 23 and 26) be GRANTED, and that this case be DISMISSED.

Dated at Burlington, in the District of Vermont, this 22nd day of October, 2009.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).